[Civ. No. 25444. Fourth Dist., Div. Two. June 17, 1981.]

JOANNE LIEBOW, Petitioner, v.
THE SUPERIOR COURT OF RIVERSIDE COUNTY, Respondent.
IRVING M. LIEBOW, Real Party in Interest.

574

COUNSEL

David N. M. Berk for Petitioner.

No appearance for Respondent.

Best, Best & Krieger and Lee R. Mohr for Real Party in Interest.

## OPINION

**McDANIEL, J.**—In these original proceedings, we are called upon to interpret, in a sister state, delinquent alimony context, section 1710.10 et seq. of the Code of Civil Procedure added by Statutes 1974, chapter 211, section 3, and since amended, having to do with California procedures for recognizing and enforcing in California the money judgments of sister states of our federal union. Such task likewise calls upon us to read the statutes noted in conjunction with certain provisions of the Revised Uniform Reciprocal Enforcement of Support Act of 1968 (RURESA), being section 1650 et seq. of the Code of Civil Procedure and particularly section 1653, subdivision (k) which defines a "support order" for purposes of the act.

Before turning to what happened in the case before us, a brief commentary is in order. The 1974 sister state money judgments act, sections 1710.10 to 1710.65 inclusive of the Code of Civil Procedure, was enacted, according to Witkin, to provide "a simple alternative method of *registration* [of foreign money judgments] for enforcement, but affords the judgment debtor an opportunity to present any available defenses. [Citations.]" (5 Witkin, Cal. Procedure (2d ed. 1981 pocket supp.) § 195A, p. 80.)

As observed in a case decided by this court, "The Sister State and Foreign Money Judgments Act (Code Civ. Proc., §§ 1710.10-1710.65) provides a simpler and more efficient method of enforcing such judgments than the traditional action on the judgment. The registration procedure established by the act is designed to allow parties to avoid the normal trappings of an original action, e.g., the necessity for pleadings. The optional procedure was intended to offer savings in time and money to both courts and judgment creditors, yet, at the same time, remain fair to the judgment debtor by affording him the opportunity to assert any defense that he could assert under the traditional procedure. [Citations.]" (*Tom Thumb Glove Co.* v. *Han* (1978) 78 Cal.App.3d 1, 7 [144 Cal.Rptr. 30].)

A constitutional challenge, for the reason that the statute fails to provide for notice and hearing before entry of judgment by the clerk, was resolved in favor of constitutionality in *Magalnick* v. *Magalnick* (1979) 98 Cal.App.3d 753 [159 Cal.Rptr. 889]. This logically was the result of the challenge, for, under the statutory procedure specified, after entry of judgment the judgment debtor may move to vacate and at that time present any defenses which would have been otherwise available in a plenary action to establish a foreign judgment under section 1713 et seq. of the Code of Civil Procedure.

For purposes of the act, a sister state judgment is *that part* of any judgment, decree or order of a court of a sister state which requires the payment of money. (Code Civ. Proc., § 1710.10, subd. (c).) Of particular significance to this appeal, such judgment does not include a so-called support order as defined in the RURESA. Support orders are excluded from enforcement under the 1974 Sister State Money-Judgments Act because they are otherwise enforceable by means of similar procedures available to an aggrieved wife or child under RURESA. Finally, a judgment entered pursuant to the act has the same effect as a money judgment of a superior court of California and may be enforced in the same manner as a California money judgment, including resort to a writ of execution.

Otherwise, an order vacating a judgment pursuant to section 1710.40 of the Code of Civil Procedure is appealable. (*Fishman* v. *Fishman* (1981) 117 Cal.App.3d 815, 819 [173 Cal.Rptr. 59].)

Against this statutory background, we turn to the maneuvering which occurred in this case. Although the procedural steps leading up to the challenged order are somewhat involved, what occurred to provoke the writ petition is not. What the California trial court did, after the wife had followed the appropriate steps to have her Ohio money judgment registered in California, was to grant the husband's ex parte motion for a protective order which had the legal effect of proscribing the wife's enforcement of her judgment by levy of execution. Thereafter, there was a motion by the wife to reconsider this action which was also denied. It was the apparent position of the trial court in issuing the protective order, because it concluded that the wife was seeking to enforce a support order, that her remedy properly lay within the provisions of RURESA and that this operated under section 1710.10, subdi-

vision (c) of the Code of Civil Procedure[1] to preclude resort to the 1974 Sister State Money-Judgments Act.

Going back to the beginning, the parties were married in Ohio in 1947. After 24 years of marriage they reached a parting of the ways, and a separation agreement providing for support payments to the wife was incorporated into an Ohio judgment of divorce in 1972. As a result of the accrual of arrearages in payments due the wife under the separation agreement, as incorporated into the judgment, the wife, in Ohio, moved in October 1979 to reduce the aggregate arrearages of $6,025 to a money judgment. Such move was successful, and judgment for $6,025 was awarded against the defendant husband "for which execution may issue" and entered December 6, 1979. There was no appeal taken from the December 6, 1979, judgment, and it has become final and therefore fully enforceable as a money judgment in Ohio.

The husband, at sometime before these proceedings were begun, had moved to California. On October 15, 1979, he filed in the Indio Branch of the Riverside County Superior Court an action by which he sought to modify the alimony provision of the Ohio judgment of divorce. Wife was then served personally in Ohio with copies of the summons and complaint. With reference thereto she appeared specially and moved to quash the service of summons upon her for lack of personal jurisdiction per section 418.10 of the Code of Civil Procedure. That motion was granted and the husband took no appeal from the order granting the motion.

The wife then on April 14, 1980, applied to the Riverside County Superior Court to have her money judgment for $6,025 registered pursuant to the procedure already described. The judgment was entered that same date, in Riverside County Superior Court No. 136287. Using that case number husband then noticed a motion for hearing on June 3, 1980, a motion to modify the support order extant perforce of the Ohio judgment of divorce. A copy of the notice of motion was served by mail on the wife's California attorney who had procured registration of the Ohio money judgment as noted.

---

[1]Under the definitions contained in section 1710.10, subdivision (c) provides: "'Sister state judgment' means that part of any judgment, decree, or order of a court of a state of the United States, other than California, which requires the payment of money, *but does not include a support order as defined in subdivision (k) of Section 1653.*" (Italics added.)

The next day, May 8, 1980, the husband filed an ex parte application to stay issuance of a writ of execution in No. 136287. There was no immediate action by the court in response to that application. Then on June 26, 1980, wife noticed a further motion to quash and to strike from the files the support modification effort. This move again was based upon the lack of personal jurisdiction over the wife. Eventually on November 17, 1980, the court entered its minute order by which the motion to quash was granted in favor of wife as was husband's application for a protective order against issuance of a writ of execution to enforce the wife's Ohio money judgment now registered in California.

The wife next moved the court to reconsider its ruling which granted husband's application for a protective order. That motion, after a contested hearing which included oral argument, was denied by minute order of December 19, 1980.

The wife's petition for an alternative writ followed soon thereafter. We directed issuance of the writ, and the matter is now before us for disposition.

## DISCUSSION

As stated at the outset, the question to be resolved depends upon an interpretation of certain statutes of recent enactment. Specifically, we must decide if the wife's money judgment for $6,025 is enforceable under the 1974 Sister State Money-Judgments Act. This in turn depends on whether it qualifies within the applicable definition found in Code of Civil Procedure section 1710.10, subdivision (c).

That provision defines a sister state judgment as any part of a judgment of another state which requires the payment of money, but excludes a *support order* as defined in Code of Civil Procedure section 1653, subdivision (k). That provision is part of RURESA and defines a "support order" as "any judgment, decree, or order of support in favor of an obligee whether temporary or final, or subject to modification, revocation, or remission, regardless of the kind of action or proceeding in which it is entered." (Code Civ. Proc., § 1653, subd. (k).)

In short, if the wife's judgment as registered in No. 136287 must be legally defined as a "support order," then the trial court was correct in precluding its enforcement.

Parenthetically, we question the procedure relied upon by the husband to challenge the enforceability of the wife's judgment after it was registered and entered on April 14, 1980, in No. 136287. As earlier explained, the entry of a sister state money judgment may be obtained ex parte. It then is available to the judgment debtor, under section 1710.40 of the Code of Civil Procedure, to move to vacate and to do so within 30 days of service upon him of notice of entry. Here, the husband did not move to vacate, but, within 30 days of entry, he filed an ex parte application for stay of the issuance of a writ of execution, purporting to proceed under section 681a of the Code of Civil Procedure. That section authorizes the stay of execution of a judgment, and here the reason a stay was sought was because the husband in No. 136287 had noticed a motion to modify the support order standing against him as part of the Ohio judgment of divorce. As we analyze it, when that notice was quashed, the application for stay became moot. However, the matter was not pursued that way in the trial court, and so we shall treat the argument of the stay application, at least at the time of the motion to reconsider, as tantamount to a motion to vacate under section 1710.40 of the Code of Civil Procedure. The legal effect of the trial court's order of December 19, 1980, which allowed the stay of execution to remain in effect was to foreclose the enforceability of wife's judgment, a consequence which had the same result for her as an order vacating the judgment would have had.

Accordingly, we turn to the question of whether the wife's judgment in No. 136287 was properly vacated, and the answer to that question, as earlier defined, turns on whether the wife's effort in California represented one to enforce a "support order" and hence beyond the procedures available to her under the 1974 Sister State Money-Judgments Act.

■ As an a priori matter of statutory construction, we find no difficulty in concluding that *that part* of the Ohio "Journal Entry" of December 6, 1979, which recited that "Plaintiff be awarded a Judgment for [Delinquent Alimony] against Defendant in the sum of $6025.00 for which execution may issue" comes within the definition of a sister state judgment as set forth in Code of Civil Procedure section 1710.10, subdivision (c).[2] This conclusion is reinforced by the language defining a "support order" found in Code of Civil Procedure section 1653, subdivision (k) which is the substance of the exclusion stated in

---

[2] See footnote 1, *ante.*

the former section. In the latter, a "support order" is one "in favor of an obligee whether temporary or final, or subject to modification, revocation or remission ..." Here there is no question but what the Ohio "Journal Entry" is now and was on April 14, 1980, a final judgment. Without more this would fit it within the language of the definition of a support order excepted from enforceability under Code of Civil Procedure section 1710.15. However, the terms of the definition also include a judgment which is "subject to modification, revocation, or remission." (Code Civ. Proc., § 1653, subd. (k).) Here, the Ohio "Journal Entry" is *not* subject to any of these; it represents, on the contrary, a final judgment for a *liquidated* sum of money for which execution may issue in Ohio. For this reason, it can be argued that the Ohio journal entry of December 6, 1979, is not a "support order" and hence not excluded from enforcement per Code of Civil Procedure section 1710.15.

▮ However, this conclusion is tarnished by the interposition of "or" instead of "and" between "temporary or final" and "subject to modification ...." Literally, this makes these two groups of descriptive conditions disjunctive instead of conjunctive. However, to construe these two groups disjunctively would yield the illogical result of causing *any* judgment to fall within the definition because all judgments are either temporary or final. Thus, to give meaning and operative effect to the latter group of descriptive conditions, it is necessary to read the "or" as legally being "and."

As observed in *Fishman*, which held that attorney's fees and costs ordered paid in a New York divorce action are recoverable in California by resort to the 1974 Sister State Money-Judgments Act, "'"[I]n construing a statute the courts may consider the consequences that might flow from a particular interpretation. They will construe a statute with a view to promoting rather than to defeating its general purpose and the policy behind it.'"' [Citing *City of Costa Mesa* v. *McKenzie* (1973) 30 Cal.App.3d 763, 770 (106 Cal.Rptr. 569).]" (*Fishman* v. *Fishman, supra*, 117 Cal.App.3d 815, 823.)

▮ Whatever the outcome of such finite analysis, it can also be concluded that elementary constitutional doctrine compels the same result, i.e., that the wife's money judgment enforceable by levy of execution in Ohio is in like manner enforceable in California. Under article IV, section 1 of the United States Constitution, which provides that "Full Faith and Credit shall be given in each State to the public Acts, Records, and Judicial Proceedings of every other State," it there-

fore follows, once the wife had taken the necessary steps to reduce the alimony arrearages to a money judgment enforceable by levy of execution, that there would be nothing which the California Legislature could do, particularly by enactment of Code of Civil Procedure section 1653, subdivision (k), to forestall the operation of the constitutional provision. Actually, this is the statutory law of this state as found in section 1913 of the Code of Civil Procedure which provides that "[t]he effect of a judicial record of a sister state is the *same* in this state as in the state where it was made . . . ." (Italics added.)

Again, referring to *Fishman*, we adopt its language as applicable here. "We hold that although that portion of the judgment in question has 'incidents' of a support order it is in actuality a money judgment. It is a final judgment; it is for a liquidated sum; it is nonmodifiable. To hold otherwise would produce absurd consequences and would defeat rather than promote the general purpose of the sister state money judgment act." (*Fishman v. Fishman, supra*, 117 Cal.App.3d 815, 823.)

In short, in view of the foregoing analysis, the trial court erred in vacating the wife's judgment in No. 136287 in the form of declining to rescind its protective order of November 17, 1980.

## DISPOSITION

Let a peremptory writ of mandate issue to the Superior Court of Riverside County directing that court to vacate its order of December 19, 1980, and to enter in its place and stead a new and different order granting the plaintiff's motion to reconsider and thereupon to deny the application of the defendant for a protective order against the plaintiff's enforcing by levy of execution her money judgment entered in No. 136287. The alternative writ is discharged.

Gardner, P. J., and Morris, J., concurred.