[No. B003017. Second Dist., Div. Six. Feb. 6, 1985.]

EILEEN NEUMAN, Plaintiff and Respondent, v.
MICHAEL BARBERA, Defendant and Appellant.

COUNSEL

Patricia A. Lynch for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Norman H. Sokolow and Andrew D. Amerson, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**STONE, P. J.**—Michael Barbera appeals from a superior court order denying his motion to vacate sister state judgment (Code Civ. Proc., § 1710.40, subd. (b)).[1] Appellant contends that the Pennsylvania judgment based upon child support arrearages should have been registered as a California judgment under the Revised Uniform Reciprocal Enforcement of Support Act (RURESA) (§ 1650 et seq.) instead of the Sister State Money Judgments Act (SSMJA) (§ 1710.10 et seq). We agree and reverse the superior court's order.

## FACTS

November 14, 1979, the Santa Barbara County District Attorney's office, on behalf of respondent Eileen Neuman, brought action against appellant

---

[1] All statutory references are to the Code of Civil Procedure unless otherwise indicated.

under RURESA (case number 127515) to collect ongoing child support and arrearages based upon child support orders contained in the parties' Pennsylvania divorce decree. Appellant, in propria persona, signed an order for support by stipulation, filed December 3, 1979, in which he agreed to pay a total monthly sum of $130 for support of his two minor children, payments to commence November 10, 1979. The court retained jurisdiction over the issue of arrearages.

May 19, 1980, the district attorney's office filed a notice of motion for modification to establish arrearages in child support with affidavits attached alleging that as of January 17, 1980, appellant owed $14,930. Appellant obtained counsel and the clerk's minutes of September 17, 1980, indicate that the district attorney requested the court take the matter off calendar subject to resetting upon 10 days' written notice by either party to enable the district attorney to obtain further information from Pennsylvania before proceeding. May 6, 1981, the district attorney, appellant, and his counsel signed a stipulation and order re child support pursuant to RURESA modifying the previous stipulation and order to provide that appellant not pay child support for either child during periods in which they reside with him.

February 2, 1982, respondent obtained a Pennsylvania judgment against appellant for arrearages for the period of February 1970, to January 1980, of $14,930, notice of which was sent to appellant by regular mail. The district attorney applied for and obtained a California judgment on sister state judgment pursuant to SSMJA (case No. 142996), and had a marshal serve appellant with notice thereof October 25, 1982.

Appellant filed a motion to vacate sister state judgment (§ 1710.40, subd. (b)) supported by his attorney's declaration that there was another action filed based upon the same issues. In written points and authorities, appellant argued that due process of law required that the judgment be enforced under a RURESA action because of the equitable defenses available under RURESA (§ 1699) which are not available under SSMJA (§ 1710.40), that the judgment was not enforceable under SSMJA because it was a support order as defined in section 1653, subdivision (k), and that respondent's misconduct should prevent enforcement. He filed no declaration in support of any factual allegation. The district attorney's written opposition on behalf of respondent objected to appellant's factual allegations as incompetent and unsupported by declarations or affidavits, and further, argued that *Liebow* v. *Superior Court* (1981) 120 Cal.App.3d 573 [175 Cal.Rptr. 26] held that an out-of-state judgment which reduces accrued support arrearages to a liquidated sum of money is not a "support order" as defined in section 1710.10, and such a judgment is properly enforceable in California under SSMJA. The matter was submitted without oral argument or witnesses'

testimony. The court found that the judgment was properly registered pursuant to section 1710.10, that *Liebow* v. *Superior Court* was controlling, and that the remaining grounds urged by appellant "are unsupported by legal authority or competent evidence." ▮ ▮▮▮ The court denied appellant's motion.[2]

DISCUSSION

▮ Appellant urges that the Pennsylvania judgment should have been registered under RURESA instead of SSMJA. Respondent contends that *Fishman* v. *Fishman* (1981) 117 Cal.App.3d 815 [173 Cal.Rptr. 59] and *Liebow* v. *Superior Court, supra,* 120 Cal.App.3d 573 compel the opposite result.

In *Fishman,* plaintiff, after appeal of the parties' dissolution action in New York, was awarded a $14,411.07 judgment for attorney's fees and costs, upon which she obtained a California judgment on sister state judgment, pursuant to SSMJA. Defendant moved to vacate the judgment on the same grounds as raised by appellant herein. The trial court apparently concluded that that portion of the New York decree awarding attorney's fees and costs constituted a support order as defined in section 1653, subdivision (k) and granted the motion to vacate.[3] The appellate court stated: "Appellant asserts in her brief that that portion of her judgment for the payment of attorney's fees and costs is not enforceable under URESA. At oral argument respondent agreed with that assertion. Both parties assured this court that applications under URESA for the purpose of enforcing such a judgment will not be accepted by the trial court. Other than those statements of counsel, this court has no information concerning whether the judgment in question could be enforced under URESA and makes no decision thereon. Assuming nevertheless that it could be so enforced, this would not prevent enforcement under the sister state judgment act. Section 1654 declares 'The remedies provided in this title are in addition to and not in substitution for any other remedies.'" (P. 821.)

---

[2]An order made on a motion to vacate under section 1710.40, subdivision (b) is an appealable order. (See *Fishman* v. *Fishman* (1981) 117 Cal.App.3d 815, 818-819 [173 Cal.Rptr. 59].)

[3]Section 1710.10, subdivision (c) provides: "'Sister state judgment' means that part of any judgment, decree, or order of a court of a state of the United States, other than California, which requires the payment of money, but does not include a support order as defined in subdivision (k) of Section 1653."

Section 1653, subdivision (k) provides: "'Support order' means any judgment, decree, or order of support in favor of an obligee whether temporary or final, or subject to modification, revocation, or remission, regardless of the kind of action or proceeding in which it is entered."

The *Fishman* court further stated that if, in fact, such judgment is not enforceable under RURESA, "appellant would be forced to follow the traditional procedure of filing a complaint, submitting to discovery, awaiting a trial date and enduring all of the attendant delays of conventional litigation. Respondent could then escape the enforcement of the judgment for a period of several years. . . . [¶] We hold that although that portion of the judgment in question has 'incidents' of a support order, it is in actuality a money judgment. It is a final judgment; it is for a liquidated sum; it is nonmodifiable. To hold otherwise would produce absurd consequences and would defeat rather than promote the general purpose of the sister state money judgment act." (P. 823.)

In *Liebow* v. *Superior Court,* wife obtained a money judgment in Ohio for accrued arrearages in spousal support in the amount of $6,025. She registered her money judgment pursuant to SSMJA. Husband obtained a protective order staying issuance of writ of execution. The appellate court concluded that wife's judgment came within the definition of a sister state judgment as defined in section 1710.10, subdivision (c). ". . . Here there is no question but what the Ohio 'Journal Entry' is now and was on April 14, 1980, a final judgment. Without more this would fit it within the language of the definition of a support order excepted from enforceability under Code of Civil Procedure section 1710.15. However, the terms of the definition also include a judgment which is 'subject to modification, revocation, or remission.' (Code Civ. Proc., § 1653, subd. (k).) Here, the Ohio 'Journal Entry' is *not* subject to any of these; it represents, on the contrary, a final judgment for a *liquidated* sum of money for which execution may issue in Ohio. For this reason, it can be argued that the Ohio journal entry of December 6, 1979, is not a 'support order' and hence not excluded from enforcement per Code of Civil Procedure section 1710.15. [¶] However, this conclusion is tarnished by the interposition of 'or' instead of 'and' between 'temporary or final' and 'subject to modification . . . .' Literally, this makes these two groups of descriptive conditions disjunctive instead of conjunctive. However, to construe these two groups disjunctively would yield the illogical result of causing *any* judgment to fall within the definition because all judgments are either temporary or final. Thus, to give meaning and operative effect to the latter group of descriptive conditions, it is necessary to read the 'or' as legally being 'and.' " (120 Cal.App.3d at p. 580; italics in original.)

The court then referred to *Fishman* v. *Fishman* and concluded that the full faith and credit clause (art. IV, § 1, of U.S. Const.) compelled the same result; "i.e.; that the wife's money judgment enforceable by levy of execution in Ohio is in like manner enforceable in California." (P. 580.)

Appellant criticizes *Liebow* as unsound and observes that the literal interpretation of section 1653, subdivision (k) disapproved of by *Liebow* would merely cause any *support* judgment to fall within the definition of a "support order," precisely the result the Legislature intended. We agree. The Law Revision Commission comment, 1974 addition, to section 1710.10 states, "Moreover, support orders as defined in 1653(k) are excluded from the coverage of this Chapter as they are enforceable under the Revised Uniform Reciprocal Enforcement of Support Act . . . ." (West's Ann. Cal. Codes, Code Civ. Proc., § 1710.10; Deering's Cal. Codes Ann., Code Civ. Proc., § 1710.10.)

The express purposes of RURESA are "to improve and extend by reciprocal legislation the enforcement of duties of support and to make uniform the law with respect thereto." (§ 1652.) "Duty of support," as defined in RURESA, is: "(A) duty of support whether imposed or imposable by law or by order, decree, or judgment of any court whether interlocutory or final or whether incidental to a proceeding for dissolution of marriage, judgment of nullity, or for legal separation, or to an action for divorce, separation, separate maintenance, or otherwise and *includes the duty to pay arrearages of support past due and unpaid.*" (§ 1653, subd. (b), italics added.) In addition, section 1672 provides, in pertinent part: "[a]ll duties of support, *including the duty to pay arrearages,* are enforceable by an action under this title, including a proceeding for civil contempt." (Italics added.)

*Morris* v. *Cohen* (1983) 149 Cal.App.3d 507 [196 Cal.Rptr. 834] supports appellant's position. There, David and Doris Cohen, also Pennsylvania residents, separated in 1959 and David was ordered to pay $50 per week for family support. David moved to California and made several partial payments. Wife obtained a divorce in 1960 and remarried Edwin Morris who adopted the two children in 1962. In 1976, Doris petitioned the Pennsylvania court to reduce arrearages to final judgment. After obtaining an $8,000 judgment, she had the judgment transferred to California and entered as a money judgment under SSMJA. David moved to vacate the judgment and attempted to raise a number of defenses which the trial court found should have been raised in the Pennsylvania courts.

The appellate court in *Morris* v. *Cohen* held that federal law does not require, nor California law authorize, the district attorney to act as a collection agency of a 14-year-old debt owed an ex-wife for support of now adult children. The court further addressed whether Doris' enforcement action in fact falls under RURESA rather than under the general act for enforcement of sister state judgments, and held that "Doris' action indeed falls under RURESA." (149 Cal.App.3d at p. 513.) The court discussed *Liebow's* interpretation of the two statutes and its interpretation of "or" to

really mean "and" to avoid what *Liebow* considered an "illogical result." The *Morris* court stated: "Our reading of the two acts, however, leads to the conclusion that this 'illogical result' is just what the RURESA drafters had in mind. The design of the legislation is such that *all* support orders, whether for sums presently due or past due and unpaid, whether final or modifiable, are to be enforced under RURESA rather than under SSMJA." (149 Cal.App.3d at p. 513; italics in original.)

The court stated further that "[a] straightforward reading of RURESA as enacted by the California Legislature makes clear that a judgment for support arrearages, despite the fact that it is a nonmodifiable final judgment for a liquidated sum of money (attributes of judgments traditionally enforced under SSMJA), is to be enforced by an action under RURESA, Code of Civil Procedure sections 1650-1699. To interpret section 1653, subdivision (k), as did the *Liebow* court, as including in the definition of 'support order' only those orders that are temporary or final *and* modifiable, contradicts the language of the preceding subdivision (b), which provides, by implication, that *all* final judgments imposing a duty of support are within the ambit of RURESA, not simply those final judgments, 'subject to modification, revocation, or remission . . . .' (§ 1653, subd. (k).) And, this interpretation of the provisions at issue furthers RURESA's purpose of providing a means of enforcing *all* support obligations of obligors located outside the jurisdiction in which dependent spouses and children are present. . . ." (P. 514; italics in original.)

Respondent argues that *Morris* v. *Cohen* fails to recognize the denial of full faith and credit implicit in its holding, and that the remedies provided for in RURESA are in addition to and not in substitution for any other remedies. (§ 1654.) Registering a sister state support judgment under RURESA, however, does not obviate the necessity of giving it full faith and credit when warranted. (See *In re Marriage of Taylor* (1981) 122 Cal.App.3d 209, 212 [175 Cal.Rptr. 716].) Moreover, even though the remedies available under RURESA are in addition to and not a substitution for any other remedies, SSMJA by its terms, excepts enforcement of "support orders" as defined in section 1653, subdivision (k). (§ 1710.10, subd. (c).)

In addition, there are other factors which, in the case at bench, militate against allowing the district attorney to seek enforcement under SSMJA. The Pennsylvania court terminated appellant's parental rights to his son in February 1982.[4] Thus, regarding past child support payments for the son,

---

[4]The record indicates that although appellant did not appear personally, he was represented by counsel at those proceedings. In contrast, the judgment for arrearages appears to be a summary proceeding, notice of entry of which was sent to appellant by regular mail.

the district attorney is "acting as a collection agency, at the taxpayer's expense" for an old debt owed an ex-wife for the support of a child to whom appellant owes no present or future duty of support. (See *Morris* v. *Cohen, supra,* 149 Cal.App.3d 507, 512.) The district attorney initiated the proper procedures to obtain child support under RURESA and obtained a stipulated order for support in which the court retained jurisdiction over arrearages. (There is a short period of overlap between the period covered in the Pennsylvania judgment and the stipulated order for support.) The district attorney requested a hearing to ascertain arrearages and then requested the matter be taken off calendar to obtain further information. A different deputy district attorney admitted to the court in the instant proceedings that he filed the SSMJA action based upon "tactics," and that "it was advantageous to us to litigate it in Pennsylvania rather than here." The district attorney should have proceeded on the original course it charted under RURESA.

The result may be the same if the court finds it must give full faith and credit to the sister state judgment. (*In re Marriage of Taylor, supra,* 122 Cal.App.3d 209.) Nevertheless, as indicated in *Morris* v. *Cohen, supra,* "Code of Civil Procedure, section 1699, subdivision (a), permits the judgment debtor to raise all defenses to enforcement of a support order under RURESA that he or she would be entitled to raise to enforcement of a support order issued by a court of this state . . . . [appellant's] failure to appear at the Pennsylvania hearing, to appeal or move to vacate the Pennsylvania judgment, does not bar him from raising defenses to its enforcement under Code of Civil Procedure section 1699, subdivision (a)." (149 Cal.App.3d 507, 514-515.)

We, therefore, reverse the trial court's order denying appellant's motion to vacate judgment, and direct it to vacate entry of judgment on sister state judgment without prejudice to respondent's registering the judgment pursuant to RURESA (§ 1698.3). It is unnecessary to address appellant's remaining issues because of our determination that the judgment should have been filed under RURESA.

Reversed and remanded for further proceedings as indicated above.

Gilbert, J., and Abbe, J., concurred.